IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| RICHARD PATTERSON,<br><br>Plaintiff,<br><br>vs.<br><br>KARI ALSTAD, ET AL.,<br><br>Defendants. | CV-21-00055-GF-BMM-JTJ<br><br><br>ORDER |

Plaintiff Richard Patterson initially filed this suit on January 12, 2021, with two other inmates. The individual suits were severed, and Patterson is now proceeding on his own independent claim related to the mailroom practices at CoreCivic Crossroads Correctional Center ("CCC").[1] The operative Complaint, at this point, is still the document filed jointly by all three plaintiffs. (Doc. 1.)

## I.  STATEMENT OF THE CASE

### A.    Parties

Patterson is a state inmate proceeding pro se and in forma pauperis. He names the following Defendants:  Kari Alstad, Montana Department of Corrections

---

[1] Patterson is currently incarcerated at Montana State Prison, but his claims arose during his time at CCC.

("DOC") contract monitor at CCC; Reginald Michael, Director of DOC; Cynthia Wolken, Deputy Director of DOC; and Pete Bludworth, Warden of CCC.  (Doc. 1 at 2-3.)

### B. Allegations

Patterson alleges a number of claims related to mail practices at CCC and the grievance practices he has been required to use to remedy his concerns. (Doc. 1 at 3-7.)

Patterson's first claim asserts that certain legal mail did not actually get mailed. On September 30, 2019, Patterson alleges that letters he had marked "Legal Mail," headed for the DOC, were returned to him by Defendant Alstad three and four days after he'd attempted to mail them. Alstad told him that Defendant Reginald Michael, the director of DOC, had sent the letters back. Patterson noted that the letters he'd received back were post-marked October 1, one day after the day he'd received them back, apparently causing Patterson confusion as to whether they were actually mailed at all. A review of his legal mail record did not clarify whether his mail had really been sent. (Doc. 3-4.)

Patterson's concerns returned in August, 2020, when Patterson wrote a letter to Defendant Cynthia Wolken at DOC. When he did not hear back from Wolken, Patterson checked his mail log again and did not see that his August letter had ever

been sent. Therefore, he filed a grievance against Defendant Alstad and the mail room.

Patterson then attempted to mail another letter to Wolken on October 26, 2020. The next day, on October 27, Patterson received a letter from Alstad, stating "As the onsite MDOC Contract Monitor, I have been asked by [sic] to respond to your letter." (The omission of who asked Alstad is in the original.) (Doc. 1-1 at 12.) This letter, received October 27, is post-dated November 2, 2020. *Id*.

Patterson's second claim relates to a period from May 2018 to June 2018, when he was pursuing litigation of some sort in state court. (Doc. 1 at 5.) Various court documents and legal mail from the state court, the public defender and the Attorney General's office did not reach him, which he claims had an adverse effect on his case.

Third, Patterson asserts that Defendants Bludworth and Michael are responsible for the grievance process and have failed to uphold their responsibilities under that policy. He also alleges they are "responsible for those that work for them." (Doc. 1 at 6.)

## II.  SCREENING PURSUANT TO 28 U.S.C. §§ 1915, 1915A

Patterson is a prisoner proceeding in forma pauperis so the Court must review his Complaint under 28 U.S.C. §§ 1915, 1915A. Sections 1915A(b) and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis

and/or by a prisoner against a governmental defendant if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A case is malicious if it was filed with the intention or desire to harm another." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005). A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). That is, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A complaint's allegations must cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

There is a two-step procedure to determine whether a complaint's allegations cross that line. *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. 662. First, the Court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680. Factual allegations are not

4

entitled to the assumption of truth if they are "merely consistent with liability," or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Id.* at 679, 681. A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability. *Id.* at 678.

Second, the Court must determine whether the complaint states a "plausible" claim for relief. *Iqbal*, 556 U.S. at 679. A claim is "plausible" if the factual allegations, which are accepted as true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). If the factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (*citing* Fed. R. Civ. P. 8(a)(2)).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf*. Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

**A.  First Amendment Mail Claims**

5

### 1. Interference with Mail

Accepting Patterson's allegations as true, he has plausibly asserted that on at least two occasions, mail that he has attempted to send to DOC staff regarding the conduct of CCC staff has been intercepted in some way by Defendant Alstad. The question is, if his mail was intercepted and not delivered, was that a violation of his constitutional rights actionable under § 1983?

The Supreme Court has recognized that prisoner correspondence at least implicates First Amendment rights. *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1209 (9th Cir. 2017). Prisoners have protected First Amendment interests in both sending and receiving mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987). Prison officials must institute procedures for inspecting "legal mail" but that only pertains to mail sent between attorneys and prisoners. *Wolff v. McDonnell*, 418 U.S. 539 at 576-577 (1974). In the Ninth Circuit, "mail from the courts, as contrasted with mail from a prisoner's lawyer, is not legal mail." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017) (quoting *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996).)  Similarly, mail to and from state agencies is not "legal mail," and may be opened and inspected outside an inmate's presence. *O'Keefe v. Van Boening*, 82 F.3d 322, 325–27 (9th Cir. 1996) (holding that inspection of grievance mailings to state agencies did not violate First Amendment); *Grigsby v. Horel*, 341 Fed. Appx. 314, 314–15 (9th Cir. 2009).

Patterson's labeling of his letters to the DOC as "legal mail" did not make them such, allowing CCC to open his mail pursuant to "reasonably related to legitimate penological interests." *Thornburgh*, 490 U.S. at 409 (*quoting Turner*, 482 U.S. at 89).

> "Legitimate penological interests include "security, order, and rehabilitation…When a prison regulation affects outgoing mail as opposed to incoming mail, there must be a "closer fit between the regulation and the purpose it serves." *Abbott,* 490 U.S. at 412, 109 S.Ct. at 1881. However, in neither case must the regulation satisfy a "least restrictive means" test. *Id.* at 411–13, 109 S.Ct. at 1880–81 (explaining *Procunier v. Martinez* ).

*Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). In *Witherow*, an inmate's letters to agency officials were examined but, importantly, not read, to determine whether the document contained any dangerous or offensive items. That regulation was sufficiently tied to a penological interest.

Here, taking Patterson's allegations as true for purposes of this screening, it is possible that the jail is reading his mail to DOC staff and not mailing it, without a penological justification. The Complaint should be served on Kari Alstad.

However, Patterson has failed to state a claim against Defendants Michael, Wolken, and Bludworth. He has failed to allege any specific facts at all regarding Wolken. He has also failed to allege anything against Michael and Bludworth regarding the handling of his mail at CCC, at most alleging that they failed to respond as he'd like to his grievances. He attempts to assert supervisor liability

against Michael and Bludworth, as being "responsible for those that work for them." (Doc. 1 at 6.) However, §1983 will not impose liability on supervising officers under a respondeat superior theory of liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94. That is, a defendant will not be held liable just because they oversee the State, a prison, or the Department of Corrections. Instead, supervising officers can be held liable under § 1983 "only if they play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F. 2d 565, 568 (9th Cir. 1987).

The Ninth Circuit has identified four general situations in which supervisory liability may be imposed:

> "for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others. … In a section 1983 claim, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them. The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."

*Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (internal citations and quotation omitted.) Patterson has alleged no facts that would support this kind of supervisory liability against Michael, Wolken, or Bludworth. He has alleged

nothing to suggest these defendants knew of any mail room impropriety or contributed to it in any way. They should all be dismissed as defendants.

## 2. Denial of Access to the Courts

Inmates have a "fundamental constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). This includes "both a right to meaningful access to the courts and a broader right to petition the government for a redress of his grievances." *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011) *overruled on other grounds as stated by Richey v. Dahne,* 807 F.3d 1202, 1209 n. 6 (9th Cir.2015). Thus, there are two types of access to the courts claims: "those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference." *Silva*, 658 F.3d at 1102.

The right to litigate without active interference, the type of claim asserted by Patterson, "forbids states from erecting barriers that impede the right of access of incarcerated persons." *Silva*, 658 F.3d at 1102 (quotations and citations omitted). This right goes beyond the pleading stage. *Id*.

To show a violation of this right to access to the courts, an inmate must demonstrate "actual injury," in that there was a "specific instance" in which he was denied access. *Sands v. Lewis*, 886 F .2d 1166, 1171 (9th Cir. 1989); *see also Lewis v. Casey*, 518 U.S. 343, 349 (1996). The injury requirement is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354-55. It is only

satisfied if an inmate is denied access with regard to a direct appeal from their conviction, habeas petitions, or civil rights actions challenging the conditions of their confinement. *Id*. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.*

Patterson has not sufficiently alleged that he suffered an actual injury with regard to the alleged denial of access to the courts.  His detailed timeline in Exhibit 15 (Doc. 1-1 at 18) raises the question of why he did not receive certain documents from the state district court, and from other parties, including the attorney general and the U.S. attorney.

It appears that Patterson asked for counsel in his state proceeding, and counsel was appointed in April of 2018. (Doc. 1-1 at 18.) When a hearing was pending on June 26 and Patterson had not yet heard anything from his new counsel, he filed two motions with the court himself, in May and early June. The State moved to strike these motions, which the court did, apparently because a presumedly represented person should not be filing pro se motions. All of this occurred without notice to Patterson, though Penelope Strong was appointed his counsel on June 8, and she continued to be his counsel through some of the various events mentioned in the Complaint in this Court. (Doc. 1-1 at 17.)

In this context, there are two fatal flaws to Patterson's claim. First, anything that occurred related to this period in 2018 is barred by the statute of limitations. The United States Supreme Court in *Wilson v. Garcia*, 471 U.S. 261 (1985), determined that the applicable statute of limitations for claims filed pursuant to 42 U.S.C. § 1983 is the state statute of limitations governing personal injury actions. In Montana, that period is three years after the action accrues. Mont. Code. Ann. § 27-2-204(1).  *See Wilson,* 471 U.S. at 279–80 (1985); *see also, Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377–80 (2004). "[f]ederal law determines when a cause of action accrues and the statute of limitations begins to run for a § 1983 claim. A federal claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991) (citations and internal quotation marks omitted); *see also Wallace*, 549 U.S. at 388; *Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015).

"A claim may be dismissed [for failing to state a claim] on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (*quoting Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).  "A complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of

facts that would establish the timeliness of the claim." *Id.* (*quoting Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995)); *see also Cervantes v. City of San Diego*, 5 F.3d 1273, 1276-77 (9th Cir. 1993) (where the running of the statute of limitations is apparent on the face of a complaint, dismissal for failure to state a claim is proper, so long as Plaintiff is provided an opportunity to amend in order to allege facts which, if proved, might support tolling); *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 788 (9th Cir. 2000) (court may raise the defense of statute of limitations sua sponte), *overruled on other grounds by Gonzalez v. Arizona*, 677 F.3d 383, 389 (9th Cir. 2011) (en banc).

In this case, Patterson alleges nothing regarding CCC's interference with his state law action after June 2018. In addition, he was aware of this "injury" as soon as he learned of the state court's striking of his pro se motions. This claim should be dismissed as barred by the statute of limitations.

Second, Patterson has failed to allege an injury from this short period of not receiving certain mail. At most, not receiving notification of contact information for his counsel caused him to file motions pro se. However, he does not state what occurred at the eventual hearing, when he was represented, and whether not having received mail during a short period caused him injury at that hearing. He construes the judge's ruling against him by striking his pro se motions as an injury per se,

but, without asserting specific prejudice to him in the ensuing proceedings in which he was represented by counsel, his allegations fail to state a claim. There is no plausible denial of access to the courts under these facts. The denial of access to the courts claims should be dismissed.

Accordingly, the Court enters the following:

## ORDER

1. Pursuant to Fed. R. Civ. P. 4(d), the Court requests Defendant Kari Alstad waive service of summons of the Complaint by executing, or having counsel execute, the Waiver of Service of Summons.  The Waiver must be returned to the Court within 30 days of the entry date of this Order.  If Defendant chooses to return the Waiver of Service of Summons, an answer or appropriate motion will be due within 60 days of the date of this Order pursuant to Fed.R.Civ.P. 12(a)(1)(B). *See also* 42 U.S.C. § 1997e(g)(2). Defendant Alstad is advised that she is only required to respond to the allegations of Plaintiff Patterson, as designated in the Complaint.

2. The Clerk of Court shall mail the following documents to Defendants:

    * Complaint (Doc. 1);

    * this Order;

    * a Notice of Lawsuit & Request to Waive Service of Summons; and

    * a Waiver of Service of Summons.

3.  Any party's request that the Court grant relief, make a ruling, or take an action of any kind must be made in the form of a motion, with an appropriate caption designating the name of the motion, served on all parties to the litigation, pursuant to Federal Rules of Civil Procedure 7, 10, and 11. If a party wishes to give the Court information, such information must be presented in the form of a notice.  The Court will not consider requests made or information presented in letter form.

4.  Patterson <u>shall not</u> make any motion for default until at least 70 days after the date of this Order.

5.  Pursuant to Local 26.1(d) "no party may begin discovery until a scheduling order has been issued."

## RECOMMENDATIONS

1.  Defendants Wolken, Michael, and Bludworth should be DISMISSED as defendants, as Patterson has failed to state a claim against them.

2.  Plaintiff's claims regarding to access to the Courts should be DISMISSED for failure to state a claim.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Patterson may file objections to these Findings and Recommendations within fourteen days after service hereof. 28 U.S.C. § 636.  Failure to timely file

written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed. R. App. P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 30th day of June, 2021.

John Johnston
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| RICHARD PATTERSON,<br><br>Plaintiff,<br><br>vs.<br><br>KARI ALSTAD, ET AL.,<br><br>Defendants. | CV-21-00055-GF-BMM-JTJ<br><br><br>RULE 4 NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE |

TO:   Kari Alstad
        50 Crossroads Drive
        Shelby, MT  59474

A lawsuit has been filed against you in this Court under the number shown above.  A copy of the Complaint (Doc. 1) is attached.  This is not a summons or an official notice from the Court.  It is a request that, to avoid the cost of service by the U.S. Marshals Service, you waive formal service of a summons by signing and returning the enclosed waiver.  To avoid these expenses, you must file the signed waiver within 30 days from the date shown below, which is the date this notice was sent.

If you file the signed waiver, the action will then proceed as if you were served on the date the waiver is filed, but no summons will be served on you and

you will have 60 days from the date this notice is sent to answer the Amended

Complaint.  If you do not return the signed waiver within the time indicated, the

Court will order the U.S. Marshals Service to personally serve you with the

summons and Complaint and may impose the full costs of such service.  Please

read the statement below about the duty to avoid unnecessary expenses.

DATED this 30th day of June, 2021.

John Johnston
United States Magistrate Judge

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint.  A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does not include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.  By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| RICHARD PATTERSON, | CV-21-00055-GF-BMM-JTJ |
| Plaintiff, | |
| vs. | RULE 4 WAIVER OF SERVICE OF SUMMONS |
| KARI ALSTAD, ET AL., | |
| Defendants. | |

TO:   The U.S.  District Court for the District of Montana

The following Defendant acknowledges receipt of your request to waive service of summons in this case.  Defendant has also received a copy of the Complaint (Doc. 1).  I am authorized by the following Defendant to agree to save the cost of service of a summons and an additional copy of the Complaint in this action by not requiring that the following be served with judicial process in the case provided by Fed. R. Civ. P. 4:

_____;_____;

that they will keep all defenses or objections to the lawsuit, the Court's jurisdiction, and the venue of the action, but waive any objections to the absence of a summons or of service.  Defendant also understands that they must file and serve an answer or a motion under Rule 12 within 60 days from the date when the Request for Waiver of Service of Summons was filed and if they fail to do so default judgment will be entered against them.

Date:  _____

_____
(Signature of the attorney
or unrepresented party)

3

_____
(Printed name)


_____
(Address)


_____
(E-mail address)


_____
(Telephone number)